**DIRECT COLOR SERVICES,
INC., et al., Appellants,**

v.

**EASTMAN KODAK COMPANY,
et al., Appellees.**

No. 12–94–00245–CV.

Court of Appeals of Texas,
Tyler.

Aug. 28, 1996.

Rehearing Overruled Oct. 2, 1996.

Don D. Bush, Nicholas A. Foley, Dallas, TX, for appellants.

Thomas H. Buchanon, Ken W. Good, David James Bush, Tyler, TX for appellees.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HADDEN, Justice.

This is an appeal from an order dismissing a suit on the grounds of *forum non conveniens*. The plaintiffs in the suit are the following nine entities: Direct Color Services, Inc., Haff–Daugherty Graphics, Inc., Halftone, Inc., Hi–Tech Color, Inc., Arthur Carroll, d/b/a Color Media, Rally Graphics, Inc., Dot's Incredible, Inc., Kingswood Graphics, Inc., and Dynagraf, Inc. (collectively, the "Appellants"). Appellants sued Eastman Kodak Company, Electronic Pre–Press Systems, Inc., Kodak Electronic Printing Systems, Inc., and Imaging Financial Services, Inc., f/k/a Eastman Kodak Credit Corporation (collectively the "Appellees"), alleging that the Designmaster 8000 System, a computer graphics imaging system which each Appellant either leased or purchased

from Appellees, was defective. Suit was filed in County Court at Law No. Two of Smith County, Texas. Appellants sought damages for breach of contract, fraud, negligence, breach of warranty, and for violation of the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA") and Massachusetts General Laws, Chapter 93A. Appellees filed a motion to dismiss based upon the doctrine of *forum non conveniens*. After several hearings, the trial court granted the motion and dismissed the case.

In their single point of error, the Appellants challenge the dismissal, alleging that the trial court abused its discretion in granting the motion on the grounds of *forum non conveniens*. We will **affirm** the order of the trial court.

Appellants are involved in the color electronic pre-press industry which is a part of the printing industry. One of the Appellants, Arthur Carroll, d/b/a Color Media, is a sole proprietorship doing business in California. The remaining eight Appellants are foreign corporations. Their states of incorporation are as follows:

| | | |
|---|---|---|
| Direct Color Services, Inc. | – | Oregon |
| Haff–Daugherty Graphics, Inc. | – | Florida |
| Dot's Incredible, Inc. | – | Florida |
| Kingswood Graphics, Inc. | – | New York |
| Halftone, Inc. | – | New Jersey |
| Hi–Tech Color, Inc. | – | Idaho |
| Rally Graphics, Inc. | – | New York |
| Dynagraf, Inc. | – | Massachusetts |

No Appellant is a Texas corporation. None has its place of business in Texas, and none is authorized to do business in Texas. Similarly, no Appellee is a Texas corporation, and no Appellee has its principal place of business in Texas, although three Appellees are authorized to do business in Texas.

Each Appellant either leased a Designmaster 8000 System from Eastman Kodak Credit Corporation, or purchased a Designmaster 8000 System from Electronic Pre–Press Systems, Inc. or Kodak Electronic Printing Systems, Inc. Appellants alleged numerous causes of action and damages arising from the use of the Designmaster 8000 System, and sought both exemplary damages and attorneys fees. However, none of the transactions underlying Appellants' claims occurred in Texas or had any connection to the state

of Texas or its citizens. The following is a summary of the Appellants' tort and contract claims:

### Direct Color Services' Tort Claims

According to Direct Color's pleadings and answers to discovery, its injuries occurred in Oregon. The conduct allegedly causing the injury took place in Oregon and Massachusetts. Direct Color is incorporated in the State of Oregon and did business in Oregon. The relationship between Direct Color and Appellees was centered in either Portland, Oregon, or Massachusetts.

### Haff–Daugherty Graphics' Tort Claims

Examining Haff–Daugherty's pleadings and answers to discovery, the trial court could have drawn several relevant conclusions. Haff–Daugherty's alleged injuries occurred in Florida and were caused by conduct in either Massachusetts or Florida. Haff–Daugherty is incorporated in Florida and has its principal business address in Hialeah, Florida. The relationship between Haff–Daugherty and Appellees was centered in either Hialeah, Florida, or Massachusetts.

### Halftone's Tort Claims

Halftone's injuries occurred in New Jersey by conduct in either Massachusetts or New Jersey according to Halftone's pleadings and answers to discovery. Halftone is a New Jersey Corporation with its principal business address in Hackensack, New Jersey. The relationship between Halftone and Appellees was centered in either New Jersey or Massachusetts.

### Hi–Tech Color's Tort Claims

According to Hi–Tech Color's pleadings and answers to discovery, its injuries occurred in Idaho and were caused by conduct which took place in either Idaho or Massachusetts. Hi–Tech Color is an Idaho Corporation with its principal business address in Boise, Idaho. The relationship between Hi–Tech Color and Appellees was centered in either Idaho or Massachusetts.

### Color Media's Tort Claims

Examining Color Media's pleadings and answers to discovery, the trial court could have drawn several significant conclusions. Color Media's alleged injuries occurred in California and were caused by conduct in either Massachusetts or California. Color Media has its principal business address in Dublin, California. The relationship between Color Media and Appellees was centered in either Dublin, California, or Massachusetts.

### Rally Graphics' Tort Claims

According to Rally Graphics' pleadings and answers to discovery, its injuries took place in New York and were caused by conduct which took place in either New York or Massachusetts. Rally Graphics is a New York corporation with its principal business address in New York, New York. The relationship between Rally Graphics and Appellees was centered in either New York or Massachusetts.

### Dot's Incredible's Tort Claims

Dot's Incredible's pleadings and answers to discovery demonstrate that its injuries took place in Florida and were caused by conduct which took place in either Florida or Massachusetts. Dot's Incredible is a Florida corporation with its principal business address in Oscala, Florida. The relationship between Dot's Incredible and Appellees was centered in either Florida or Massachusetts.

### Kingswood Graphics' Tort Claim

According to Kingswood Graphics' pleadings and answers to discovery, its injuries took place in New York and were caused by conduct which took place in either New York or Massachusetts. Kingswood Graphics is a New York corporation with its principal business address in New York, New York. The relationship between Kingswood Graphics and Appellees was centered in either New York or Massachusetts.

### Contract Claims

The Appellants also alleged several contract claims. The contracts that the Appellants signed with either Electronic Pre–Press

Systems, Inc. or Kodak Electronic Printing Systems, Inc. provided that the law of the state of Massachusetts would apply to any disputes over the contract. Several Appellants signed one or more service agreements with Electronic Pre–Press Systems, Inc., Eastman Kodak Company, or Kodak Electronic Printing Systems, Inc. These service agreements likewise had a choice of law provision applying Massachusetts law. Each Appellant also leased at least one Designmaster System from Eastman Kodak Credit Corporation. These lease agreements contained a provision that New York law would apply to any dispute between the parties over the lease agreement.

With respect to the claims against Electronic Pre–Press Systems, Inc. and Kodak Electronic Printing Systems, Inc., Massachusetts has a substantial relationship to the parties in each such transaction because the corporate offices of both were there, and the Designmaster System was assembled in Massachusetts. Moreover, the training of each Appellant on the Designmaster System occurred in Massachusetts.

With respect to the claims against Eastman Kodak Credit Corporation, New York has a substantial relationship to the parties in the transactions because (1) Eastman Kodak Credit Corporation's offices are located in New York, (2) the decision to lease the equipment to the particular Appellants was made in New York, and (3) Appellants remitted lease payments to Eastman Kodak Credit Corporation in New York.

The trial court found that the application of the doctrine of *forum non conveniens* was appropriate in this action for several reasons, and included the following in its order of dismissal:

1. No Plaintiff is a Texas resident or has its principal place of business in Texas;
2. No Defendant is a Texas resident or has its principal place of business in Texas;
3. The contracts which are the subject of Plaintiffs' claims contain provisions that the laws of Massachusetts and New York shall govern any claims involving such contracts. None of the transactions between any Plaintiff and any Defendant giving rise to any Plaintiff's claims occurred in Texas. Accordingly, Texas law is not the substantive law governing any claims;
4. Alternative forums are adequate and available to resolve the claims including at least Massachusetts, Oregon, New York, Florida, New Jersey, Idaho and California;
5. The persons with knowledge of facts relevant to the claims are, with very limited exceptions, in states other than Texas, and no party can compel the attendance of any witnesses at trial;
6. None of Plaintiffs' claims· or alleged damages arose or occurred in Texas;
7. The claims are complex and will require significant time and resources to resolve; it is unjust to impose on the citizens of Smith County as well as the Court the burden of resolving litigation that has no Texas connection.

■■ The doctrine of *forum non conveniens* is an equitable doctrine exercised by courts to resist imposition of an inconvenient jurisdiction on a litigant, even if jurisdiction is supported by the long-arm statute and would not violate due process. *Sarieddine v. Moussa*, 820 S.W.2d 837, 839 (Tex.App.—Dallas 1991, writ denied). Although the Texas Supreme Court has neither enthusiastically embraced the doctrine of *forum non conveniens*, nor revealed fully its contours, it has acknowledged the existence of the doctrine as announced by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *A.P. Keller Dev., Inc. v. One Jackson Place, Ltd.*, 890 S.W.2d 502, 505 (Tex.App.—El Paso 1994, no writ), *citing Flaiz v. Moore*, 359 S.W.2d 872, 874 (Tex.1962). Texas recognizes the doctrine as a procedural rule which does not determine jurisdiction, but only determines that the jurisdiction which exists should not be exercised where another forum, also having jurisdiction, is better able to act. *McNutt v. Teledyne Indus., Inc.*, 693 S.W.2d 666, 668 (Tex.App.—Dallas 1985, writ dism'd). A Texas court will exercise the doctrine of *forum non conveniens* when it determines that, for the convenience of the

litigants and witnesses, and in the interest of justice, the action should be instituted in another forum.[1] *Sarieddine,* 820 S.W.2d at 839; *Van Winkle–Hooker Co. v. Rice,* 448 S.W.2d 824, 826 (Tex.Civ.App.—Dallas 1969, no writ).

The applicable standard of review is whether the trial court abused its discretion. *A.P. Keller,* 890 S.W.2d at 505; *Sarieddine,* 820 S.W.2d at 841. The test for abuse of discretion is not whether in the opinion of this Court the facts present an appropriate case for the trial court's actions. Rather, it is a question of whether the trial court acted without reference to any guiding rules and principals. *Keller,* 890 S.W.2d at 505. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985).

There are several steps in conducting *forum non conveniens* analysis. *Sarieddine,* 820 S.W.2d at 841. First, there must be a determination that an alternative forum exists, because the doctrine presumes that at least two forums are available to the plaintiff to pursue the claim. *Sarieddine,* 820 S.W.2d at 841; *Van Winkle–Hooker Co.,* 448 S.W.2d at 826. The alternative forum element has two components, that is, an alternative forum must be available and adequate. An exception to the general rule that the defendant bears the burden on all elements of *forum non conveniens* is that, once the defendant establishes that an "available" forum exists, the plaintiff must prove that the available forum is not adequate. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 393–394 (5th Cir.1983).

The second and third steps are to weigh the private and public interest factors to be considered by the court in determining whether the doctrine of *forum non conveniens* should be applied. These factors were articulated by the United States Supreme Court in *Gilbert.* The *Gilbert* factors are not exhaustive, however, and a trial court has the discretion to consider other relevant factors bearing on the issue. The important private interests of litigants that a trial court may consider are:

1. Relative ease of access to sources of proof;

2. Availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

3. Possibility of view of premises, if view would be appropriate to the action; and

4. All other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843.

The public interest concerns recognized by the *Gilbert* court include:

1. Administrative difficulties caused by litigation not handled at its origin;

2. Jury duty imposed upon people of a community which has no relation to the litigation;

3. Inability of people whose affairs may be touched by litigation to learn of it other than by way of report if held in remote part of the country;

4. Local interest in having localized controversies decided at home; and

5. Appropriateness of having a trial in a diversity case in a forum that is familiar with the state law that must govern the case, rather than having a court in

---

1. Historically, there has been some question in Texas as to which causes of actions are subject to *forum non conveniens* analysis. *In Dow Chemical Co. v. Alfaro,* 786 S.W.2d 674 (Tex.), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 671, 112 L.Ed.2d 663 (1990), the Texas Supreme Court held that Section 71.031 of the Civil Practice and Remedies Code abolished *forum non conveniens* in cases involving personal injury and wrongful death. The Texas Legislature has since codified

the doctrine of *forum non conveniens* for personal injury and wrongful death cases at Section 71.051 of the Texas Civil Practice and Remedies Code, but the new statute only applies to causes of action filed on or after September 1, 1993. However, *Alfaro* and its progeny are limited to personal injury and wrongful death suits under Section 71.031, and are not applicable to the instant case. *See Sarieddine,* 820 S.W.2d at 841.

some other forum untangle problems in conflict of laws and in law that is foreign.

*Id.* at 508–509, 67 S.Ct. at 843. The factors listed above have been recognized expressly in Texas. *See Sarieddine,* 820 S.W.2d at 840.

### A. ALTERNATE FORUMS ANALYSIS

In order to invoke the doctrine of *forum non conveniens,* there must exist at least two forums which are available to Appellants. *Sarieddine,* 820 S.W.2d at 841. A forum is "available" when the entire case and all the parties can come within the jurisdiction of that forum. *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 727 (5th Cir.1990), *cert. denied,* 499 U.S. 925, 111 S.Ct. 1322, 113 L.Ed.2d 255 (1990). Once the moving party establishes that an available forum exists, the burden is on the plaintiff to prove that the available forum is not adequate. *Vaz Borralho,* 696 F.2d at 393–394. A forum is considered "adequate" when the parties will not be deprived of all remedies or treated unfairly. *In re Air Crash Near New Orleans, La.,* 821 F.2d 1147, 1165 (5th Cir.1987), *vacated,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1988).

It appears from the record that Appellants have alternate forums in which to bring their claims. Appellants can bring their claims against each Appellee in the state where each Appellee has its principal place of business. The states would include New York and Massachusetts. In addition, with respect to the tort claims Appellants assert, the states of Oregon, Idaho, New York, New Jersey, California, and Florida would have jurisdiction over Appellees for the claims each Appellant specifically asserts.

Appellants argue that a forum is "available" only if all parties and all claims fall within the jurisdiction of that forum. However, this component has been defined in the context of personal jurisdiction, that is, whether there are "at least two forums in which the defendant is *amenable to process.*" *Gilbert,* 330 U.S. at 507, 67 S.Ct. at 842 (emphasis added). A defendant is amenable to process when either it has minimum contacts sufficient for a court to exercise jurisdiction over it or it agrees to submit to the jurisdiction of the court. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 358 (Tex.1990). Appellants rely on *Quintero, supra,* in arguing that an alternative forum is "available" only if all plaintiffs and all defendants can come within the jurisdiction of that forum. However, after reviewing the authorities cited by Appellants, it appears that the key question in determining whether another forum is "available" is whether the defendant is amenable to process or would voluntarily submit to the jurisdiction of the forum.

The decision in *Pain v. United Technologies Corp.,* 637 F.2d 775, 785 (D.C.Cir. 1980), *cert. denied,* 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) further underscores the fact that "available" is defined in terms of jurisdiction over a defendant. The court wrote, "[b]y entering dismissal only on the condition that [defendant] UTC agree to submit to the jurisdiction of the various foreign courts of [plaintiffs'] choice, Judge Hart ensured that the defendant would both appear and defend in an alternative forum." *Id.* The *Pain* opinion also makes clear that, where there are multiple plaintiffs with independent claims, a trial court is not limited to dismissal in favor of a single forum. First, the court in *Pain* conditioned its *forum non conveniens* dismissal upon the defendant's agreement to submit to the jurisdiction of *"various* foreign courts." *Id.* at 785 (emphasis added). In fact, the D.C. Circuit Court's opinion recognizes that the defendant "agreed to submit to the jurisdiction of potentially four separate foreign countries." *Id.* at 791. Second, the D.C. Circuit Court commented that there was no requirement that, following dismissal, all plaintiffs join together to bring their claims in a particular forum. *Id.* The court recognized "that none of the conditional dismissals required plaintiffs to sue in any particular forum." *Id.* This comment is a recognition that, following a *forum non conveniens* dismissal, the plaintiffs who had consolidated their independent claims into one lawsuit may litigate their claims in multiple forums separate from other plaintiffs. *See Id.*

In the instant case, the trial court found a number of alternative forums available and

adequate for each Appellant. In regards to Appellants' argument that not one of the alternative forums could hear the entire lawsuit, this is not the case. Appellees stipulated that they would submit to the jurisdiction of the courts of New York and Massachusetts. Appellees also agreed to submit to the jurisdiction of the courts of the states where Appellants have their principal place of business. Therefore, as to each of the nine Appellants, Appellees agree to submit to the jurisdiction of at least two, and sometimes three, alternate forums.

■ Appellants argue, somewhat hypothetically, that, as to some of them, if the applicable statute of limitations in the available forums had run, then Appellants' claims would be barred. In other words, Appellants argue that dismissal was inappropriate because the laws of the alternative forum may be unfavorable to Appellants when compared with the laws of Texas, and thus the "available" forum was not adequate. We are not persuaded. First, it was Appellants' burden to submit evidence that the available forum is not "adequate." Appellants submit no evidence that their claims would be barred. Moreover, the United States Supreme Court has examined the question of whether a court considering a motion to dismiss based on *forum non conveniens* should consider whether the law of the alternative forum is less favorable than the law of the forum chosen by the plaintiff. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 238–40, 102 S.Ct. 252, 257, 70 L.Ed.2d 419 (1981). The Supreme Court wrote, "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Id.;* 454

U.S. at 247, 102 S.Ct. at 261. The Supreme Court reasoned that plaintiffs are usually able to choose among several forums and will most often select the forum whose choice of law rules are most advantageous. As a result the Court noted, "if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper." *Id.* at 250, 102 S.Ct. at 263. It is further noted that as a condition to the order of dismissal, the trial court expressly required Appellees to stipulate that for purposes of limitations, the date of filing in the alternative forum would relate back to the date each Appellant filed its cause of action in Texas. The trial court was careful to insure that Appellants would be in the same position in the alternative forum as they were in Texas. The amended stipulations achieved that appropriate objective and the alternative forums are no less adequate because Appellees did not wholly waive their limitations defenses.

■ Next, Appellants argue that the courts of their home states are no longer available to them because Appellees have already filed claims against them in those courts. However, Appellants cite no authority to support their argument that a forum is not "available" because an Appellee has already submitted to the jurisdiction of that forum. Further, Appellants fail to explain how Appellees can object to the exercise of jurisdiction by the alternative forums over them when Appellees have submitted themselves to the jurisdiction of the alternative forum. We conclude, therefore, that at least two alternate forum states were available to each Appellant, as follows:

| | |
|---|---|
| Direct Color Services, Inc. | Massachusetts, New York or Oregon |
| Haff–Daugherty Graphics, Inc. | Massachusetts, New York or Florida |
| Halftone, Inc. | Massachusetts, New York or New Jersey |
| Hi–Tech Color, Inc. | Massachusetts, New York or Idaho |
| Color Media | Massachusetts, New York or California |
| Rally Graphics | Massachusetts or New York |
| Dot's Incredible | Massachusetts, New York or Florida |
| Kingswood Graphics, Inc. | Massachusetts or New York |
| Dynagraf | Massachusetts or New York |

### B. PRIVATE AND PUBLIC INTEREST FACTORS

 We will next review the private and public interest factors which were before the trial court. No Appellant or Appellee has its principal place of business in Texas. The sources of proof available to Appellees to defend against Appellants' claims are in other states, primarily New York and Massachusetts. No one identified by Appellants as having knowledge of relevant facts is within subpoena range of the Smith County courthouse. Appellants argue that at least three witnesses reside in Texas. However, one of the three witnesses is Appellants' expert who resides in Houston. Experts are *selected* by the parties and are available virtually anywhere in the United States. To give controlling weight to this factor would allow any plaintiff to easily circumvent the *forum non conveniens* doctrine by choosing an expert in an inconvenient forum. *See Norman v. Norfolk & Western Railway Co.,* 228 Pa.Super. 319, 323 A.2d 850, 855 (1974). The other two witnesses are fact witnesses, and these two persons, Richard Crawford and Kay Crawford, moved to Texas after the lawsuit was filed. If the case were tried in Smith County, Texas, Appellees would be unable to compel the attendance of witnesses, including the few who reside in Texas. Continuation of this trial in Texas could cause Appellees to incur significant expense which could be avoided if the case is tried in an available jurisdiction.

Furthermore, the laws of potentially seven different states may apply to Appellants' claims. The relevant and appropriate choice of law rules which the trial court would have to apply in the instant case, along with the specific contractual provisions, dictate that the laws of several states would govern the claims asserted by Appellants. Texas is not one of those states. Thus, the application of a unique set of laws to each Appellant would be confusing and would be unduly burdensome for the Texas trial court.

Also, the trial court found that there would be administrative difficulties caused by trying the case in Smith County, Texas. It would impose jury duty upon citizens of Smith County to hear a cause of action that has no connection whatsoever to Smith County. It would also require the Smith County, Texas, court to devote its time to a complex, multi-party, commercial lawsuit involving non-Texas residents at the expense of the court's criminal, family, and general civil cases involving Texas citizens. Moreover, the citizens of Smith County, who will likely have their access to the judicial system delayed for six to eight weeks or more, are unable to have their day in court in Massachusetts, New York, or some other state whose courts would have jurisdiction over the instant claims. Smith County and Texas tax dollars would be used to resolve disputes that have no relation to Smith County or Texas. Also, local interest in the trial would be far greater in the areas where Appellees reside or in the areas where each Appellant has its principal place of business located.

Finally, Appellants contend that the ruling was improper because Appellees have sufficient connections to the state of Texas and Smith County which justify the retention of this case for trial in Smith County, Texas. In support of this argument, Appellants cite the numerous routine business activities of Eastman Kodak Company in Texas, including ownership of property, maintaining offices, conducting sales, and contracting for and servicing Designmaster 8000 Systems. However, none of these activities are shown by Appellants to have any relationship to the contracting for and servicing of the Designmaster 8000 Systems which were sold or leased to Appellants. Our conclusion is that the private and public interest factors support the trial court's dismissal for *forum non conveniens.*

### C. LATENESS OF MOTION

 Appellants next assert that the lateness of the motion to dismiss for *forum non conveniens* was harmful to Appellants and denies substantial justice if allowed to stand. The motion to dismiss on the grounds of *forum non conveniens* was filed by Appellees nine months after the case was filed. Appellees filed their motion to dismiss after an initial phase of discovery was completed, allegedly to determine whether it was appropriate to seek dismissal based on *forum non conveniens.* At the time the motion was

filed, not all parties had been added, and Appellants had taken two depositions. Following the filing of Appellees' motion, Appellants allege that they requested further time to conduct discovery specifically on the issue of *forum non conveniens.*

■ The Texas Supreme Court has addressed the question of when *forum non conveniens* may be appropriately raised:

> If the court is to decline jurisdiction on that ground [forum non conveniens], the question must be raised at a time and in a manner that will give the parties an opportunity to present evidence regarding the circumstances that are relevant to a determination of whether jurisdiction should or should not be retained.

*Flaiz,* 359 S.W.2d at 875 (Tex.1962). In its opinion, the *Flaiz* court specifically analyzed New York law on *forum non conveniens* and when it could be raised in that jurisdiction. The court noted that some authority existed in New York for raising *forum non conveniens* for the first time on appeal and also referenced authority that a defendant must raise *forum non conveniens* no later than the end of trial. The *Flaiz* court expressly stated its disagreement with the rule that *forum non conveniens* could be raised on appeal. The *Flaiz* court did not, however, express any disagreement with the rule that a defendant has until trial to raise *forum non conveniens. Id.* We conclude therefore, based on *Flaiz,* that the issue of *forum non conveniens* may be raised anytime before trial.[2]

Our examination of the record in light of the elements outlined above leads to the conclusion that dismissal based on *forum non conveniens* was appropriate. The trial court's dismissal based on *forum non conveniens* does not rise to the level of arbitrary and unreasonable action and was, therefore, not an abuse of discretion. Appellants' sole point of error is overruled.

The Order of the trial court is affirmed.

---

2. The Texas Civil Practices and Remedies Code § 71.051 *et seq.* requires a motion to dismiss on the grounds of *forum non conveniens* to be filed not later than a motion to transfer venue. TEX. CIV.PRAC. & REM.CODE ANN. § 71.05(e). However, this statute does not apply to actions other than personal injury or wrongful death.