Affirmed and Opinion filed August 17, 2004









Affirmed and Opinion filed
August 17, 2004.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-01286-CV

_______________

 

THOMAS G. ADAMS, D. O., ET AL., Appellants

 

V.

 

ESC MEDICAL SYSTEMS, INC. AND 

LUXAR CORPORATION, Appellees

_________________________________________________

 

On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 01‑23590A

_________________________________________________

 

O P I N I O N

 

In
this products liability case, seventy appellants appeal the dismissal of their
claims based on forum non conveniens (AFNC@) on the grounds that ESC Medical
Systems, Inc. and Luxar Corporation (collectively, AESC@) failed to show that: (1) there was
a single preferable alternative forum; or (2) the Gilbert[1]
factors weighed strongly in favor of the dismissal.  We affirm.








Background

This
case was brought by twelve Texas, and seventy non-resident, health care
providers, alleging that various laser hair removal and other cosmetic medical
devices they purchased from ESC did not operate as promised.  The trial court=s order (the Aorder@) dismissed only the claims of the
seventy non-resident plaintiffs, who reside in twenty-two other states.

Standard of Review

An
FNC determination is reviewed for abuse of discretion.  See Gulf Oil Corp. v. Gilbert, 330
U.S. 501, 511 (1947).[2]  FNC is an equitable doctrine exercised when a
court determines that, for convenience and the interest of justice, an action
should instead be instituted in another forum,[3]
commonly because non-resident claimants are asserting claims that arose outside
the state and will require application of foreign law.  See Flaiz v. Moore, 359 S.W.2d 872,
874-75 (Tex. 1962).  Factors relevant to
an FNC determination include: (1) private interests, such as relative ease of
access to sources of proof; and (2) public interests, such as administrative
difficulties for the courts.  See
Gilbert, 330 U.S. at 508-09.  Unless
the balance of factors strongly favors the defendant, the plaintiff=s choice of forum should rarely be
disturbed.  Id. at 508.

Appellants= three issues essentially argue that,
because appellees failed to show the existence of a single, or otherwise
preferable, alternative forum for the case, the trial court abused its
discretion by scattering their seventy claims to be litigated in at least
twenty-two separate lawsuits in that many other states.[4]








Availability of Alternative Forum

It
is undisputed that dismissal for FNC requires the existence of an alternative
forum in which all of the defendants are amenable to process.[5]  However, a further question presented in this
case is whether FNC requires an alternative forum in which all of the
defendants are amenable to process by all of the plaintiffs.  At least two Texas opinions have contained
language suggesting that the entire case and all parties should be able to come
within the jurisdiction of the alternative forum.[6]  However, neither of those cases, nor any
other opinion the parties have cited or we have found, overturned an FNC
dismissal for the lack of such an alternative forum; and one Texas case
arguably rejected the argument that such a forum must exist.[7]  Under these circumstances, we lack a
sufficient basis to conclude that the dismissal was in error for the absence of
a single alternative forum in which all of the defendants were amenable to
process by all of the plaintiffs.

Adequacy of Alternative Forum

Appellants=s third issue contends the trial
court abused its discretion because ESC failed to show that the Gilbert
factors strongly favor dismissal.[8]  Appellants maintain that the numerous state
forums are not more convenient for anyone.








Application
of the Gilbert factors obviously varies according to the perspective
from which they are viewed. Because appellees= claims all arose in other states,
the Gilbert factors favor the dismissal and refiling in those respective
states in that sources of proof will be more easily accessible there; governing
law can more readily be applied by courts there; and Texas courts and jurors
will not be imposed upon to determine disputes that have no relation to
them.  On the other hand, consolidating
such litigation in a single court, rather than at least twenty-three, offers
considerable advantages in terms of judicial economy, reducing the likelihood
of contradictory determinations, and arguably increasing the likelihood of a
large-scale settlement.

The
fact that this suit was also brought by Texas plaintiffs (indeed, a
disproportionate number of Texas plaintiffs[9])
further obscures the Gilbert analysis. 
Although not framed in such terms, the FNC dismissal in this case is, in
effect, a considerable constraint on whatever right of permissive joinder Texas
plaintiffs have with regard to out-of-state plaintiffs.  As a practical matter, if fracturing
multi-state plaintiffs= claims, as occurred in this case, is proper on FNC grounds,
then the ability of plaintiffs from multiple states to bring joint actions in
Texas is seriously in question, and without regard to the considerations that
otherwise govern joinder of claims.  We
have found nothing to suggest that this is in any way an objective of the FNC
doctrine.  Nevertheless, despite the
potentially wide-ranging, and possibly unintended, consequences of applying the
FNC doctrine in this manner, we have not been provided authority clearly
demonstrating it to be error. 
Accordingly, appellant=s issues are overruled, and the judgment of the trial court
is affirmed.

 

/s/        Richard H. Edelman

Justice

 

Judgment rendered
and Opinion filed August 17, 2004.

Panel consists of
Justices Fowler, Edelman, and Seymore.

 











[1]           See
Gulf Oil Corporation v. Gilbert, 330 U.S. 501 (1947).





[2]           The Gilbert
analysis has been adopted by the Texas Supreme Court.  See In re Smith Barney, 975 S.W.2d
593, 596 (Tex. 1998).





[3]           See
Exxon Corp. v. Choo, 881 S.W.2d 301, 302 n.2 (Tex. 1994).





[4]           In
dismissing the claims of the seventy non-resident plaintiffs, the trial court=s order did not identify an alternative forum, but
accepted appellees= stipulation that, if the dismissed plaintiffs file
actions in their respective home states within one year of the dismissal, ESC
would not object to jurisdiction, and any applicable statute of limitations
would be tolled.





[5]           See,
e.g., Direct Color Servs., Inc. v. Eastman Kodak Co., 929 S.W.2d 558, 564
(Tex. App.CTyler 1996, writ denied); Sarieddine v. Mousa,
820 S.W.2d 837, 841-42 (Tex. App.CDallas
1991, writ denied).





[6]           See
Direct Color, 929 S.W.2d at 564; Sarieddine, 820 S.W.2d at 841.





[7]           See
Direct Color, 929 S.W.2d at 564.





[8]           However,
although not material to our determination, at least one Texas opinion has held
that, once a defendant establishes the existence of an alternative forum, the
burden shifts to the plaintiff to prove that it is not adequate.  See Direct Color, 929 S.W.2d at 563.





[9]           We
have not found a break-down in the record of the number of plaintiffs from each
state.  However, dividing the 70
non-resident plaintiffs by the 22 states they represent produces an average of
less than four plaintiffs for each of those states; whereas the 12 Texas
plaintiffs amount to more than three times that average.